May it please the Court, Counsel. My name is Scott Gann. I'm here with my partner, Michael McGrath. We represent the debtor in this case, Linda Vista Cinemas. The issue presented to this Court today is whether the temporary conditional stay the debtor proposed as part of its Chapter 11 plan violates Section 524 of the Bankruptcy Code and this Court's prior decisions in Lowenshouse and American Hardwoods. In order to analyze this question, the Court is required to analyze Section 524 and the temporary conditional stay requested by the debtor. If the Court examines Section 524A, it will see what a discharge is under the Bankruptcy Code. 524A.1 indicates a discharge is avoiding of any judgment entered at any time on a discharged debt. Section A.2 states that a discharge affects a permanent injunction against the collection actions on a discharge debt as a personal liability of the debtor. The Court then looks to Section 524E and determines how that section should be interpreted in light of its placement in the Section 524, the effects of discharge. If the Court looks to its prior decisions in American Hardwoods and in American Hardwoods, it says that the only way to determine whether a discharge is a permanent injunction is the imposition of a permanent injunction which affects a discharge for a non-debtor. That is what the Court's held in those cases. That's what the Code prohibits. Further support? The Court's held that Section 105A, the decision which you authored, you stopped at a section in that decision where you indicated that Deutsche Bank argued that Section 105 of the Bankruptcy Code did not empower the Bankruptcy Court to take any further action after confirmation of the plan.  And you specifically stated that that you did not agree with that statement. You specifically went on to address whether Section 105A could be used to enter orders post-confirmation that did not con or were not contrary to or were not prohibited by specific provisions of the Bankruptcy Code. If, as you – if, as the Bank suggests, that the power ends upon confirmation, then you would not have extended the discussion or the analysis to those other provisions to see if the Bankruptcy Code prohibited it. And, in fact, we know that's not true, because we know that the statute, Section 105, is very broad and gives the Court extreme powers unless specifically prohibited by other provisions of specific law. We don't find that those two cases specifically address this limited circumstances which is presented here. So in analyzing the statute and examining the specific temporary conditional stay that's sought in this particular case, the Court looks to see does it violate the overall discharge provisions of Section 524 and specifically Section 524E. Now, the placement of that section within the overall discharge statute indicates that its purpose is to prevent any post-confirmation order based upon the discharge of the debtor that affects a discharge release of the liability of a non-debtor or its property. That placement in that position harmonizes that provision with the other statutes within 524. It follows the Court's directive that the Court should fit any particular statute symmetrically in a coherent statutory scheme. Interpreting 524E in that manner makes it consistent with the discharge provisions of 524. In addition, this Court, this Court indicated in, excuse me, this one's going to take a second, the plan in this case was specifically tailored to suggest or to request a very limited stay which specifically did not affect a discharge of Section, under Section 524A. And I remembered my last point. The last point was you'll remember in Lowenstrasse that there's a reference in a footnote to the enactment of Section 524G. 524G was enacted by Congress to specifically address the imposition of a permanent injunction and discharge of individuals under this, the asbestos litigation cases. So Congress, in enacting the Bankruptcy Reform Act of 1994, was specifically addressing, again, the concept of how a non-debtor might obtain a discharge under 524, so that, again, consistently reading the provisions of the discharge statute together, we come to the conclusion which is clear that Congress intended not to allow the discharge of the debtor to affect a discharge or release of the liability or the property of a non-debtor. Now, the reason that that does not occur in this case, and the reason it does not occur in this case, is because this plan was specifically drafted not to violate Section 524 and specifically drafted not to run afoul of this Court's prior decisions in both American Hardwoods and in Lowenstrasse. That's why the injunction is tailored not to have a release of the guarantor's liability, not to release the guarantor's property, to reaffirm the obligations under the guarantees, to require the guarantors to comply with all requirements of plan payment, and if they don't contribute or the plan goes into default, the stay, the temporary conditional stay, immediately is released. Without any court action, the bank is entitled to proceed with whatever enforcement rights it wants. And the stay only remains in effect as long as monthly payments are made. The bank is ultimately paid under the terms of the plan which the Court found to be in compliance with the Bankruptcy Code, to be in compliance with the requirements for confirmation, and to provide fair, valid treatment of a secured creditor's claim with interest over a reasonable period of time and would effectuate a full repayment of all creditors' claims. That's how the injunction was tailored and that's why it was tailored in that manner and that's why it doesn't violate Section 524 or this Court's prior precedents. So what is the basis this Court could use to allow this kind of temporary conditional stay to be imposed? The Bankruptcy Code at Section 105 is the primary focus, but Sections 1123b-1, 1123b-5, 1123b-6, and Section 1142b allow this kind of action. We know that 1123b-1 states that the debtor may impair their claims. We know that 1125b-5 allows for the modification of secured claims. We know that 1123b-6 allows for the Court to enter any other appropriate order that's not inconsistent with the Code. And in 1142b, we find that the Court and this Court has said in the Hillis-Motors decision, which we cited in our brief, that in 1142b, the Bankruptcy Court retains post-confirmation jurisdiction to ensure that the plan is implemented and that it satisfies itself, that the plan is being properly administered and is being consummated. Those Bankruptcy Code provisions, in combination with Section 105, provide the Bankruptcy Court with the ability to tailor a very narrow conditional stay. Mr. Counsel, can you explain to me why the sort of side preliminary injunction against Bank of Arizona going against the Cutlers and the fire protection business, how does that aid Linda Vista recovering in this bankruptcy? What's the nexus between those two things? Factually, the Bankruptcy Court made the determination that the guarantors have supplied in the past over $4.2 million to the debtor for various purposes, including construction and related expenses and including payments to the bank. And the evidence presented to the Bankruptcy Court, uncontradicted, was the guarantors, if they were permitted to continue without interference in their business operations, had agreed to contribute more than $437,000 to the overall reorganization, that those funds were necessary, essential, important, and in compliance with the Bankruptcy Code's overall concept of trying to confirm a Chapter 11 plan that would rehabilitate this debtor and allow it to emerge from Chapter 11. Doesn't this end up being sort of an unfair sidebar agreement? In other words, you've got a Bankruptcy Court saying, well, in order for Linda Vista to recover, it's going to depend on the largesse of the Cutlers. And although the Cutlers are not a party to us and we don't really know what their personal circumstances are, I'm not going to let anybody enforce anything against the Cutlers because that might affect their ability to fund Linda Vista. Why isn't the remedy here for the Bank to go against the Cutlers on their guarantee and the Cutlers then to declare their own bankruptcy if they can't meet their obligations? In other words, why does it become the burden of the Bank on this sort of side agreement involving a party that's not a party to the bankruptcy? Your Honor, I think that's a very complicated question. I know it was complicated. It was long. It was. But its answer is complicated, and that's because it really involves several different factors. One of the important factors is the difficulty that would be in the – that would devolve from the filing of the Cutlers bankruptcy and the Cutlers business filing bankruptcy. That's one of the factors. Another more complicating factor is that you have the bankruptcy judge and is trying to do what the bankruptcy code empowers him to do, and that is to try to determine whether this particular limited stay falls within the balance of all of the requirements for the issuance of a stay. That bankruptcy judge sat and heard the testimony and tried to – and he put it forth in his 43-page decision. After he set forth the facts and the law, he tried to balance the – went through the exact analysis you'd expect for any kind of stay or injunction to be issued. And on his – in his view, you looked at the first – the primary factor was whether or not there was – there was a likelihood of success under the Chapter 11 clause. Does the bankruptcy court's stay only apply to the Bank of Arizona attempting to enforce the guarantees of the Cutlers? Or does it – does it also inure to the benefit of the Cutlers in other respects? Can their – can their mortgage company come and repossess the house if they fail to make mortgage payments? The – the short answer and the exact answer is it only applies to the Bank. Mm-hmm. And that's – and that's appropriate here, because what you would be suggesting – Every other lending institution can go back against the Cutlers on their obligations, except for the Bank of Arizona. I have to answer that, yes, but the answer was there was no evidence, and the bankruptcy court specifically found there was no evidence to suggest that there was any potential breach or – or significant breach that was on the horizon that jeopardized the Bank's position. It specifically found that in its bankruptcy court decision, that based upon the evidence presented, there was no likelihood. But more importantly, Your Honor, what you would be – if you – if you would allow me, what you would be allowing the bankruptcy court to do, which was beyond its power and what it didn't want to exceed, is it didn't want to provide the Cutlers with the absolute protection of an injunction that was more broad than it had to be. It was tailored for the purposes of allowing this particular confirmation and these creditors, including the Bank, to be paid in full. It didn't try to exceed its authority, and it didn't try to extend its – the power beyond what it believed was absolutely necessary to effectuate those purposes under Chapter 11. So it's – it's exactly what you'd ask a bankruptcy court to do under these circumstances, listen to the evidence, hear and look at the authorities, consider the ramifications of its decision, balance the equities as well as the law, and try to find the most reasonable solution. And that's what the bankruptcy court did. And in doing that, it did purposely try to avoid breaching both the bankruptcy code and your prior precedent. That's what this plan was designed to do. And this narrow legal issue that's presented to you today does not ask you to determine if that injunction is appropriate or not. Because the legal issue before you is does the bankruptcy court, under the bankruptcy code and under your prior precedent, does it have the authority to consider confirmation of a plan with this provision in it? It's a legal issue for you to determine today. What we're asking you to do is to instruct the bankruptcy court, you may reverse your decision and consider – and consider entry of the confirmation order. What that order will contain and the specific provisions that will be within that injunction have yet to be determined because there is no final confirmation order. This is an interlocutory state, a direct appeal to this court from the denial of confirmation. And that's all that's presented to this court today. So how do you define this precise issue? The precise issue is does the bankruptcy court have the power under Section 105 to enter a temporary stay that would enjoin the collection against a non-debtor guarantor because it does not violate Section 524 nor this court's prior decisions? I've enjoyed your presentation. I know I'm going to run you over on this one, but this is a – the first time I've had this kind of a proceeding in the time I've been on the court where we're coming up on an interlocutory order. And the interlocutory order that we're reviewing is that of the district court where the district court judge indicated that there was a conflict in cases in the Ninth Circuit. And because of that conflict of cases in the Ninth Circuit, it is to the benefit of the parties, et cetera, to make that decision now. Based upon what we had before us at a motion panel, they decided they granted jurisdiction. Of course, that's all temporary until it comes to the three-judge panel who can then overrule the motions panel. So we have the issue before us of whether or not the district judge was right. And it's critical because that spaces our jurisdiction. We have no power to make this decision unless the district court was right. I've listened to your argument very carefully and a very persuasive argument. But the argument itself shows that there is no conflict, that American hard words is in good shape. There may be some other cases in the Seventh Circuit and other circuits to do otherwise. But the two cases upon which you based your argument are completely consistent and there's no indication of any conflict. If we come to that conclusion, then don't we have to reassess the grant of jurisdiction made by the motions panel? And if we conclude that there is no conflict to strike that motion for lack of jurisdiction of our court and send it back to the trial court? I know that's a difficult question, but there's no cases on it. You know, what happens if we get the case and we decide the motions panel was wrong? Our power is easy. The three-judge panel rules. But then does that mean we have no jurisdiction because the statute clearly defines that as our jurisdiction to take this interim appeal? Would we strike it and send it back and then wait for the full case to come up and make our ultimate decision? Well, Your Honor, let me try to address that if I can. I did not really, very candidly, did not really anticipate the procedural issue of this nature being raised at this point in the proceeding, again, because the Court had accepted jurisdiction based upon what the district court said. So my first inclination would be to draw your attention to the district court's very well-reasoned ten-page decision wherein she sets forth why she believes that there is jurisdiction and a direct appeal is permissible here. And what I also would point to the Court is, while you are correct that I do not believe that our bankruptcy, that our particular bankruptcy plan runs afoul of Section 524 or this Court's prior decisions, what troubled the bankruptcy court and what troubled the district court were not this Court's pronouncements. It was the pronouncements of other lower courts, both the district court and the bankruptcy appellate panel in this circuit, which seemingly had conflicting results, and that resulted in the bankruptcy court's position that it, while it felt that it wanted to, that the plan should be confirmed, without guidance from the circuit, it certainly didn't want to do something that would ultimately end up being reversed by this circuit as plainly violative. So if you effectively do not review this decision, what will end up happening is the bankruptcy court won't confirm this plan because it will believe that by denying jurisdiction, you left in place its prior decision, which denied confirmation of the plan, which then means that the issue. I don't read the courts below seeing a conflict here. I read below that some bankruptcy judges don't like the decision and they like the Ninth Circuit decision better. But there's a real issue here whether or not there's a conflict in the Ninth Circuit. Well, there's at least two decisions that are absolutely referencing a similar factual pattern to this. The one I would draw your attention to, gee, I hate to cite contrary authority to me and I hate to make the argument for the other side in the midst of winning a potential appeal. I have to direct your attention to contrary authority. But there's the decision in Rohnert Park, which was the BAP decision, which dealt with a limited injunction, different than ours and distinguishable from ours. And the other decision is the Regatta Bay decision that was issued by Judge Silver in the United States District Court because, again, that particular debtor was unable to sustain the burden that was required. We're not talking about a potentially outside-of-the-realm argument that I presented that's new or different. We're talking about refining a very important concept that was the Bankruptcy Court was on the cusp of confirming this plan, but because the Bankruptcy Court believed that this Court is the ultimate arbiter of this particular issue, it felt that it should be different. And there is a problem here of what does the statute mean about a conflict in the Ninth Circuit? That is, if a district court or the BAP decides that it should be decided different from the United States Court of Appeals for the Ninth Circuit, whether there's any conflict at all, whether we have to have cases that are in conflict, and their responsibility is to follow our cases. So it's an issue that has never come up when I've been on a panel, and it's a very difficult issue. I understand your position, and you've made a very fine argument. But it just strikes me that the jurisdiction issue may be critical, and I wanted to raise it with you and give you a chance at it. Well, let me just make one other point, and I'll sit down because I'm well over my time, and I apologize to the Court. Oh, it's not. This we raised at the very end because I wanted to give you all the time on the merits, because my colleagues may not be troubled at all about this. And that is that you, that this Court in the Loewenschutz decision, and again, I hate to raise contrary authority and try to argue against myself to defeat a jurisdictional argument, but this Court in Loewenschutz cited Rohnert Park. It cited it for the proposition that a limited stay was problematic under the bankruptcy code. It didn't discuss the decision. It didn't distinguish the decision, because in Loewenschutz, the particular injunction at issue was a permanent discharge of the non-debtor. So it's simply in discussing the general law, but it pointed out that particular case. Again, I think that begs this Court's question, the question for this Court, is it time to resolve the difference between a permanent injunction and a narrowly tailored temporary conditional stay that the bankruptcy court may envision is appropriate under these circumstances? I would ask the Court to accept jurisdiction in this matter and to render a decision that simply says we believe that it may be appropriate, we'll have to review it if ultimately the Court enters the final order, and the bank continues to pursue this matter as unfair and takes up an appeal with district court and ultimately brings that particular injunction to this Court. But the legal issue that's presented, this Court should accept and should issue a decision that says it's not contrary to the code and it's not contrary to our prior decisions. Thank you very much for your attention. Roberts. Thank you, counsel. May it please the Court, counsel, I'm Gerald Shelley, Fenimore Craig, Phoenix, Arizona. I represent the appellee BOKF, which does business in Arizona, as Bank of Arizona. If I may, I want to go first to Judge Wallace's question about jurisdiction and simply paint this picture. This isn't a new dance for the circuit. This is an issue that the circuit's looked at over and over again from different angles, and it's continually come to the same decision. Let's go back to 1985, the Underhill decision. That's when this Court first said you can't grant non-debtors relief through a bankruptcy plan of another. 1989, American Hardwood, Judge Wallace, you can't do that. There's no authority to do that. 1995, the Loewenschuss case that Mr. Gann spoke about. Again, there's language in there. This Court has repeatedly held. This is not a new dance. This is the same thing. 2007, the Solidus case, Judge Bybee was on that panel. Clearholding. You can grant an injunction up until the time of plan confirmation, but once the plan is confirmed, third parties don't get the benefits of bankruptcy without the burdens. What's the case you're referring to? That's the Solidus case. It's a 2009 circuit case. I can get you the site if you'd like. Right. I've got it. It's from 2000? 2007. Oh, 2007. And it made it clear the injunction stops right at confirmation. One of the questions that was asked earlier is, well, what keeps the non-debtors from filing bankruptcy? They could. There are seven non-debtor entities in this case that the plan purportedly gives post-confirmation relief to. Any one or all seven of those could easily file bankruptcy. Judge Marler, the presiding bankruptcy judge, would, I'm certain, grant administrative relief so the cases could be administered together. And all of a sudden you have the non-debtors who are in bankruptcy and who can get that protection. But for reasons that are not part of the record and that we don't need to go into this morning, they've chosen not to file bankruptcy, but to get all of the benefits of it through a plan of an entity that they control and they own and expect to get relief from. Now, let's take a step back and look at this from the bank's perspective. It's really clear that this loan was not bankable without the guarantor liability. And there's a lot of loans out there that fall in that category. You have a new enterprise. You have an enterprise that doesn't have enough consistency or enough of a record to show that it's bankable. And so what do banks do? And they do it all the time. They look to third parties as guarantors. The market's done all sorts of things since American hardwood with guarantee liability. You see things such as a bad boy guarantee, which prohibits the non-debtor from placing the guarantee. There are a number of ways that the market has adapted. If we change what's pretty well-established law, I think it will really affect the market. I'm not standing here saying the sky is going to fall down, it's going to completely change the world. But it's going to create a situation where loans that are today bankable because of third-party guarantors will not be bankable because of some sort of amorphous multi-element test that these very clever lawyers, and my hat's off to them, have put up and have found under some very specific facts. I think back to my analysis, you have the A.H. Robbins case that falls in line. Now, that's not a Ninth Circuit. That's a Fourth Circuit case. And it did grant some relief to non-debtor guarantors. But that was an asbestos case. And within six years, Congress had amended the bankruptcy code, 524G, to deal with that specific situation. If Congress wanted to grant broader relief, they could have done it at that time, or they could maybe have left A.H. Robbins alone. But no, they specifically said, big case, asbestos, yes, there is some third-party relief that we can grant. There's a similar case that's been cited by the other side, the Eridine case. It's not a Ninth Circuit case, but it purportedly says, circuit-level case, purportedly says you can grant non-debtors relief through a plan. Eridine is way different from the facts that we have here. In Eridine, the relief that was granted to non-debtor parties were those who participated in the reorganization. And specifically, you had a lender who came in to provide post-confirmation financing who asked for a relief based on the conduct that had taken place only in the context of the confirmation that was presided over by the bankruptcy court. You see those sorts of provisions often in confirmed bankruptcy plans, where counsel and parties who are involved in the negotiating and the confirmation process ask for releases at the time of confirmation. And they're granted, and that makes sense. This is an entirely different situation where you have guarantors from the inception of the loan that are asking for bankruptcy protection and are unwilling to jump into the bankruptcy court and full jurisdiction themselves. The next point I wanted to make, just very briefly, is you were completing a point. Is it the position of the bank that there is no inconsistency and the district court was wrong as to whether there's consistency on this issue in the Ninth Circuit? Thanks for bringing me back. Yes, that is my point. I don't look at the Ninth Circuit law as there being some sort of conflict. There might be an argument based on the Aradine case that I just referred to that there may be a split in the circuits on post-confirmation relief, but I think that's a stretch based on the facts. But that's not within the statute. The statute requires the conflict to be within the circuit. Then what do you do? I don't suppose you've made any study of this, but it would be nice if you had. If we find that we are in conflict with the motions panel and assuming that we have authority to overrule the motions panel, what kind of an opinion would we write? I'm in the same position as Mr. Gann, not having given that thought, except that I did have the benefit of hearing it at the table before I stood up. Yeah, you have ten more minutes. Yeah, I did. It does seem to me that you decline jurisdiction and you say we can't rule under the present circumstances because we don't find a conflict within the Ninth Circuit. And then the process would go forward, I think it's still in the bankruptcy court? Yes, it is. The bankruptcy case is still pending there, and in fact Judge Marler has, despite the language in the solidus decision, Judge Marler has continued the stay, the temporary stay, now for just about three years. It will be three years in May, because he was in charge of the bankruptcy case. I'm interested in seeing this issue brought to the circuit. Yes, but the statute allows either the bankruptcy judge or the district court to send that up, but I assume the statute had in mind that the district court would have the case before they'd send it up. That is, there would be an appeal from the bankruptcy court to the district court, and then the district court would send it up. Here we're reviewing a case and I'm not even sure the district court has jurisdiction over it, because there's been no appeal, there's been no confirmation in the district court, so I don't see any way to get it to the district court. I could be wrong, I'm no expert in bankruptcy, but it strikes me that we would have to have something from the district court before we could even consider this. Do you have any help on that? Have you done any research in that area? I have not. I don't have anything to add. I think it's a fascinating issue from a procedural perspective. Yes, it's not very nice for the parties, but for a judge, this is good Monday. We may ask for additional briefing on this issue, but we have what we have, and if we need to afterwards we can talk among ourselves. Or we may very well think we've got enough to make a decision based on what's before us. So we may, when we talk about what we may do, I don't want you to go home thinking that we're going to call for additional briefing when we might just rule. Your Honor, I like very much what you're saying, because I don't think there's any reason to deviate from what the Ninth Circuit has repeatedly stated. Well, I'm hoping so. I mean, I do think Judge Wallace in American Hardwood said, look, there's no authority to do this. And then Judge Bybee's panel in the Solidus case said, well, there is authority to grant that injunctive relief, but only until the time of confirmation. So now if there's going to be a reversal, as my colleagues over here suggest, you're going to have to do an awful lot of overruling of an awful lot of cases that have been around for a long time. Well, why don't you specifically take your remarks towards the presentation made by your adversary, which was a very logical approach of how American Hardwood's can stand based upon his analysis. And maybe you should spend some time on that. I don't read American Hardwood's that way. I don't see that there is that little window that allows for this type of exception where you have several factors that somehow line up and say to a bankruptcy judge, well, this is the exception. It seems to me that there's pretty clear and consistent authority that the equitable powers of the bankruptcy court exist. They exist in order to try to enforce what bankruptcy courts do, but they are limited by more specific provisions. Here 524E says the discharge of a debtor cannot affect or only affects the discharge of that debtor, but then the courts have interpreted it to say it does not allow for a 524E discharge to affect other parties post-confirmation. We have the Pacific Shores decision, that's 2004 Ninth Circuit decision, that makes it clear that the equity powers of the court are limited and that the court does not have a roving commission to do equity. The facts in this case are very appealing, and I can only speak for the state of Arizona. You're not going to find better or more sophisticated debtor's counsel than my opponents. Very capable, did an excellent job in lining things up here. But they're asking for a grant of equitable authority that goes far beyond what the circuit has ever considered or offered. And to be clear about the limitation of the equitable authority, we have the United States Supreme Court, just this last year, in the Radlax decision, which we supplemented post-filing of our briefs, that says the same thing. The equitable powers are limited by more specific provisions. 524E is more specific. Congress made that clear by enacting 524G and saying, okay, there's a special grant in asbestos cases, but no more. So despite the fact that if we can get over the jurisdictional hurdle that Your Honor just mentioned, Judge Wallace has suggested, there's no precedent to allow this. The Ninth Circuit's spoken. It has adverse effects on borrowers, and it makes no sense to unilaterally stop one creditor, while all other creditors out there have the ability to go against the non-debtor guarantors. That seemed very unfair to the bank. It seems arbitrary, and it certainly takes away that bargain without bringing the debtors into bankruptcy. They could always file and end that. If we were to sustain the bankruptcy court's decision here, what would the Bank of Arizona do the next time somebody comes in as a guarantor on a loan? Is there any way that the Bank of Arizona could contract around this? They could. There's the bad boy provisions and guarantees that I mentioned earlier where they could say there is no third-party guarantor liability unless you place the entity into bankruptcy. But to be more specific to your question, I don't know how they could do this, because if the courts will authorize protections post-confirmation for non-debtor guarantors, I don't know how you craft a guarantee that somehow deals with that ahead of time. You can do that. Can you contract around bankruptcy? You can't. Certainly not on your own bankruptcy. Can you contract around somebody else's bankruptcy that says, well, you're going to be the guarantor and we really, really, really mean it? If you can, I've not seen the guarantee that does that. Which means then that in the future, if the bank had any lingering doubts about the viability of the principal company, not the guarantor, then the principal company isn't going to get the loan because the guarantee isn't any good. Right on the margin, there are a number of loans that will not be made. Again, I said the sky's not falling, but on the margin, we're going to lose the bankability of a lot of loans because of a judicial decree. The possibility is then that LendaVista would have never gotten the loan in the first place, never would have been in business, so they couldn't go bankrupt. I can tell you the bankers myself on this loan said this loan would not have been made but for the third-party guarantees. Thank you. Mr. Gann, we took you way over your time. So you've had more than ample time before the Court. I'm going to allow you one minute. If there is something here that must be clarified in the record, otherwise, as I said, we've given you ample time before the Court. I agree, Your Honor. At the one point I wanted to draw the Court's attention to was the jurisdictional question. I thought Judge Wallace asked that how could this Court conceivably have jurisdiction in this case without the final order being entered. And what I want to draw the Court's attention to is to 28 U.S.C. Section 158D, 1 through the end of that section, because that section specifically provides this Court has jurisdiction to review interlocutory orders of the bankruptcy court that are reviewable by the court. And it does not require the district court to resolve the issue because it permits direct appeal of the interlocutory bankruptcy court decision to this Court. That's what I wanted to have established. He suggests that the law doesn't permit this. Judge Wallace had asked how can we get there. Congress made this change in the bankruptcy code, in Title 28, I'm sorry, in the code that governs courts, for specifically permitting this kind of case. That's why Judge Marler entered an order that said, I would certify, and that's why when we apply to, which is what this rule provides, that a district court can have our motion or on its own motion can then send this matter jurisdictionally to this Court. I appreciate the extra time, and I apologize for it. Thank you. We thank both counsel in a difficult, complex, and very interesting case for a case very well argued. With that, the Court has completed its oral argument calendar, and we stand in recess until 9 o'clock tomorrow morning.
judges: Wallace, Farris, Bybee